IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| CHARLENE WITTEBORT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:06-00144 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion to Remand (Doc. No. 11.) and Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Charlene Wittebort (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on December 29, 2003 (protective filing date),[1] alleging disability as of June 15, 2003,[2] due to chronic obstructive pulmonary disease ("COPD"), weight loss, and possible lung

---

[1] The Commissioner asserts that Claimant's SSI application and initial and reconsideration denials were unavailable for inclusion in the transcript but that the documents "are duplicative in substance to her DIB application." (Doc. No. 13 at 2, n.1.)

[2] At the administrative hearing, Claimant's counsel requested that Claimant's onset of disability date be changed to July 2003. (Tr. at 236-37.)

cancer.[3] (Tr. at 55, 56-58, 72 .) The claim was denied initially and upon reconsideration. (Tr. at 23-25, 30-32.) On September 7, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 33.) The hearing was held on January 6, 2005, before the Honorable Douglas N. Jones. (Tr. at 192-237.) By decision dated February 11, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-20.) The ALJ's decision became the final decision of the Commissioner on February 8, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On February 27, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

---

[3] In Claimant's Request for Consideration, she alleged that she experienced constant pain, shortness of breath, dizziness, weight loss, and headaches. (Tr. at 28.)

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

     In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffered from COPD, osteoarthritis and diffuse osteopenia of the thoracic spine, mild joint disease of the left shoulder, status post fracture of left ulnar styloid, status post hysterectomy, headaches, status post cardiovascular accident, and weight loss of undetermined cause, which were severe impairments. (Tr. at 17 and 19, Finding 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17 and 19, Finding 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, that involved "only occasional bending at the waist or knees, occasional kneeling, no crawling, occasional climbing stairs, no climbing ladders, no exposure to high humidity, no exposure to dust, fumes or other air borne pollutants, and no exposure to very hot or very cold temperatures." (Tr. at 17.) At step four,

the ALJ found that Claimant retained the residual functional capacity to perform her "past job as a retail sales clerk as it is generally performed in the national economy." (Tr. at 19, Finding 7.) On this basis, benefits were denied. (Tr. at 19-20.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 12, 1952, and was 53 years old at the time of the administrative hearing. (Tr. at 16, 56, 197.) Claimant had a tenth grade education and vocational training as a certified nurse assistant and heavy equipment operator. (Tr. at 16, 78, 197.) In the past, she worked as a nursing assistant, retail sales clerk, dietary aide/dishwasher, cook/child care worker, heavy

equipment operator, and construction laborer. (Tr. at 16, 89-95, 202-07.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in finding that Claimant was able to perform her past relevant work as a retail sales clerk and (2) failed to find definitively that Claimant's pulmonary impairment was a severe impairment. (Pl.'s Br. at 3-7.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 5-9.)

Analysis.

1. Past Relevant Work.

Claimant first argues that the ALJ erred in determining that she could return to her past relevant work as a retail sales clerk because her past work at Dollar General was not that of a "retail sales clerk." (Pl.'s Br. at 3-6.) Rather, Claimant argues that in view of the reported functional description of her past work, which included lifting up to 75 pounds, her past work more resembled that of a stock clerk. (Id. at 5.) Claimant concedes that her past work at WalMart was properly considered a retail sales clerk. (Id.) She argues however, that because she held the WalMart job for only six months, such work must be considered a work attempt and not past relevant work. (Id. at 5-6.) The Commissioner asserts that based on the testimony of a VE, the ALJ properly determined that Claimant could perform her past relevant work as a retail sales clerk as that job is generally performed in the national economy, and not how Claimant actually performed it. (Def.'s Br. at 6.) Regarding the WalMart job, the Commissioner asserts that past relevant work need only be work

5

performed within the last 15 years which lasted long enough for Claimant to have learned how to do the job. (Id. at 7.) According to the Dictionary of Occupational Titles, a retail sales clerk position can generally be learned in one to three months, and therefore, Claimant worked the job long enough for it to qualify as past relevant work. (Id.)

The Regulations provide that when it cannot be decided whether a claimant is disabled on medical evidence alone, the Agency will consider the individual's residual functional capacity together with his or her vocational background. See 20 C.F.R. § 404.1560(a) (2004). Residual functional capacity will be compared with the physical and mental demands of the claimant's past work, and if the person can still perform his past relevant work, he will be found not disabled. See id. § 404.1560(b). Past work experience is relevant when it is work that was performed in the last 15 years, which lasted long enough for the person to learn to do it and which was substantial gainful activity. See 20 C.F.R. § 404.1565(a). Substantial gainful activity is "work activity that is both substantial and gainful." Id. § 404.1572. Substantial work activity involves significant physical or mental activities, and work may be substantial even if it is done part-time. Id. § 404.1572(a). Gainful work activity is work done for pay or profit, whether or not a profit is realized. Id. § 404.1572(b).

In determining whether a Claimant can perform her past relevant work ("PRW"), the Regulations provide that the claimant will be asked to provide information about past work and that the Commissioner will consult other sources, including vocational experts and specialists, as well as the Dictionary of Occupational Titles ("DOT"), in obtaining necessary evidence about the PRW. See 20 C.F.R. § 404.1560(b)(2) (2004). With regard to the role of the Vocational Experts ("VE") in this determination, the Regulations provide as follows:

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally

>performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

Id.

Social Security Ruling (SSR) 82-62 notes that "[t]he RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" SSR 82-62, 1982 WL 31386, *3. This Ruling also requires the following specific findings of fact when the Commissioner determines that a Claimant can return to his or her past relevant work:

>1. A finding of fact as to the individual's RFC.
>
>2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
>3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, *4. There are two main tests for determining whether a claimant retains the capacity to perform his or her past relevant work: (1) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he actually performed it; or (2) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. See Social Security Ruling 82-61, 1982 WL 31387. In using the second test, the DOT descriptions can be relied upon to define the job as it is usually performed in the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties

actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.' " Id. at *2.

In the instant case, the ALJ determined that Claimant could return to her past relevant work as a retail sales clerk "as it is generally performed in the national economy." (Tr. at 19.) In making this determination, the ALJ made the requisite findings under SSR 82-62. First, he found that Claimant has the RFC for light work, diminished by postural and environmental limitations. (Tr. at 17.) Claimant takes no issue with this finding. Next, the ALJ found that Claimant's past relevant work as a retail sales clerk was semi-skilled and was performed at the "medium to heavy" exertional level by Claimant, but is generally performed in the national economy at a "light" exertional level. (Tr. at 18.) In making this determination, the ALJ relied upon the testimony of the Claimant and VE at the administrative hearing. (Tr. at 18-19.) The VE testified that the retail sale clerk job, as defined in the DOT, is semi-skilled work at the light exertional level. (Tr. at 227.) The VE further testified however, that Claimant "indicated the work, as she performed it, was more like a stocker, which is medium to heavy exertional level." (Id.) This assessment was based on Claimant's testimony at the administrative hearing that she worked as a clerk and cashier and was required to be on her feet all day, lifting boxes off a truck, which weighed a maximum of 75 pounds. (Tr. at 202-03.) Claimant reported in written documents that she also ran a cash register, stocked shelves, and cleaned. (Tr. at 91.) These documents further reflect Claimant's classification of this type of work as that of a retail sales clerk. (Tr. at 89.) Claimant attaches to her Motion the listing for DOT § 290.477-014, Sales Clerk, which indicates the requirements of the job to include, *inter alia*, obtaining or receiving merchandise; stocking shelves, counters, or tables with merchandise, setting up displays; and cleaning shelves, counters, or tables. (Doc. No. 11, Exhibit A at 1.) Based on these functions, together with

8

the VE's testimony and Claimant's testimony and reports, the Court finds that substantial evidence supports the ALJ's classification of Claimant's past relevant work as a retail sales clerk as that job is generally performed. The ALJ acknowledged that Claimant's past work required her to perform lifting activity in excess of the general exertional requirement of a retail sales clerk and properly limited her to performing work at the light exertional level as generally performed. The Court therefore, finds that the ALJ's determination that Claimant's past relevant work at Dollar General was that of a retail sales clerk is supported by substantial evidence of record.

Assuming Claimant's past work at Dollar General was that of a stocker, the fact remains that Claimant has concedes that her past work at WalMart was that of a retail sales clerk. The Court finds that the ALJ properly considered this work as "past relevant work." As stated above, past relevant work is work that was performed in the last 15 years, which lasted long enough for the person to learn to do it and which was substantial gainful activity. See 20 C.F.R. § 404.1565(a). It is clear from the record that Claimant's past work at WalMart ended in 2001, and therefore, was performed within the last 15 years. According to DOT § 290.477-014, as submitted by Claimant, the retail sales clerk position has a specific vocational preparation rating of "3," which requires only one to three months to learn how to do the job. (Doc. No. 11, Exhibit A at 2.) Claimant worked at WalMart for six months (Tr. at 203.), and therefore, worked long enough to learn how to do the job according to the DOT. The record further demonstrates that the job was done for profit and involved both substantial physical and mental abilities. Claimant's past job therefore, also constituted substantial gainful activity. Pursuant to the Regulations, Claimant's past work as a retail sales clerk was properly considered by the ALJ as "past relevant work."

Based on the foregoing, the Court finds that the ALJ's step four analysis was proper and in accordance with the Regulations. Accordingly, Claimant's arguments are without merit and the Court

finds that substantial evidence supports the ALJ's decision that Claimant was capable of returning to her past relevant work as a retail sales clerk.

2. <u>Pulmonary Impairment</u>.

Claimant also argues that the ALJ failed to weigh adequately the medical evidence regarding her pulmonary impairment. (Pl.'s Br. at 6-7.) Specifically, Claimant asserts that the ALJ improperly found that the medical evidence implied a pulmonary impairment when he stated that it "may impair her ability to do work." (<u>Id.</u> at 7.) She asserts that the objective evidence demonstrates a decrease in oxygen exchange and that if the ALJ was unable to determine whether the impairment negatively impacted her ability to work, then he should have expanded the record. (<u>Id.</u> at 6-7.) The Commissioner asserts that the ALJ properly noted the evidence regarding Claimant's severe pulmonary impairments and accounted for the resulting functional limitations in his RFC finding. (Def.'s Br. at 8-9.) Consequently, the Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (<u>Id.</u>)

"RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In his decision, the ALJ summarized the medical evidence regarding Claimant's pulmonary impairment. (Tr. at 18.) Specifically, he noted chest x-rays and CT scans, which revealed bilateral basilar densities, hepatomegaly and right angionyolipoma, with markings which verified her chronic obstructive pulmonary disease ("COPD"). (Tr. at 18, 141-42, 167, 185, 186.) Chest x-rays on November 25, 2003, revealed a possible right lung mass, although it was thought to have been pneumonia. (Tr. at 167.) Further x-rays on May 24, 2004, however, demonstrated no lung mass and noted that the pulmonary vasculature appeared normal. (Tr. at 18, 167, 186.) The ALJ noted that Plethysmograph reports revealed moderately decreased diffusing capacity, with FEV 1 indications, pre-treatment, of 1.76. (Tr. at 18, 172.) The ALJ further acknowledged Claimant's complaints of shortness of breath, dizziness, orthopnea, and chest pain. (Tr. at 18.) However, on December 16, 2004, Dr. Othman observed normal breath sounds. (Tr. at 18, 184.) Moreover, with knowledge of her pulmonary impairments, Claimant continued to smoke cigarettes. (Tr. at 18, 150, 160.) Claimant was treated with prescription Advair, Albuterol Inhaler, and Talwin. (Tr. at 18, 184.)

In evaluating Claimant's RFC regarding her pulmonary impairment, the ALJ found most significant the fact that Claimant's treating physician placed no restrictions or limitations on Claimant. (Tr. at 18.) The two RFC assessments of record were completed by state agency physicians, who indicated Claimant's COPD as the primary diagnosis, and limited him to performing

light exertional work diminished by occasional postural and environmental limitations. (Tr. at 132-39, 176-83.) Specifically, the state agency physicians opined that Claimant should avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. at 136, 180.) In making their assessment, each physician considered the objective evidence of Claimant's pulmonary impairment, as well as her subjective complaints. (Tr. at 139, 183.)

Finally, the ALJ considered Claimant's reported activities of daily living. (Tr. at 18.) Claimant testified that she prepares simple meals, straightens the house, folds clothes, makes the beds, straightens papers, does laundry, and reads. (Tr. at 18, 213-19.) Claimant also reported on written documents that she did laundry; paid bills; washed dishes; prepared meals; shopped for food, clothing, and medication for three hours each week; walked; gardened for several hours; read books; watched television; listened to the radio; and visited, and received visits from, friends and family on a daily basis for one to two hours. (Tr. at 18, 96-99.) The ALJ further noted that Claimant lived alone and cared for her own personal needs and grooming. (Tr. at 18, 96-97.)

On the bases of the medical evidence of record and Claimant's activities of daily living, the ALJ found that "[t]he evidence simply implies that [C]laimant's pulmonary impairment *may* impair her ability to work." (Tr. at 18.) (emphasis in original). The ALJ determined that Claimant was capable of performing light exertional work, diminished by postural and environmental limitations, including no exposure "to high humidity, no exposure to dust, fumes or other air borne pollutants, and no exposure to very hot or very cold temperatures." (Tr. at 17.)

Upon a careful review of the record, the undersigned finds that the ALJ properly evaluated the objective and subjective evidence regarding Claimant's pulmonary impairment but found that the impairment was not disabling. The ALJ's decision was consistent with the RFC assessments of

record. The ALJ found that Claimant could perform light work with specific limitations which accommodate Claimant's symptoms, complaints of pain, and slightly diminished objective testing results. (Tr. at 18.) Therefore, the ALJ took into account most of Claimant's symptoms in assessing her residual functional capacity. The ALJ's evaluation of Claimant's pulmonary impairment is supported by substantial evidence and Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion to Remand (Doc. No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 28, 2007.

R. Clarke VanDervort
United States Magistrate Judge